AMERICAN RAILROAD CO. OF PORTO RICO *v.* ORTIZ.

APPEAL from the District Court of Mayagüez.

No. 383.—Decided June 18, 1909.

RAILROAD FRANCHISES—APPROVAL BY THE PRESIDENT OF THE UNITED STATES—DATE OF BECOMING OPERATIVE.—In accordance with section two of the Joint Resolution of Congress of May 1, 1900, an ordinance of the Executive Council of Porto Rico granting a railroad franchise shall have force and effect immediately after being approved by the President of the United States.

CONDEMNATION PROCEEDINGS—SPECIFIC DESCRIPTION OF THE PROPERTY SUBJECT
TO EXPROPRIATION.—It is an indispensable requisite, in order to institute
condemnation proceedings, that the Executive Council shall describe specific-
ally the property which is to be condemned, in accordance with the Act of
March 12, 1908.

ID.—DECLARATION OF PUBLIC UTILITY—INSERTION IN THE COMPLAINT.—It is an
essential requisite of the complaint in condemnation proceedings that it con-
tain a full insertion of the declaration of public utility made by the Executive
Council, according to section four of the Law of Condemnation Proceedings,
amended March 12, 1908.

ID.—SELECTION OF LAND WHICH IS TO BE EXPROPRIATED.—The Law of Condemna-
tion Proceedings, amended March 12, 1908, does not grant railroad companies
the right to select the lands needed for their purposes and which in their
opinion should be expropriated.

ID.—CONDEMNATION PROCEEDINGS—LAW REGULATING SAME.—This complaint hav-
ing been filed after the Law of Condemnation Proceedings of March 12, 1908,
was already in force, the proceedings must be carried on in accordance with
this new law.

The facts are stated in the opinion.

*Mr. Manuel F. Rossy* for appellant.

*Mr. F. L. Cornwell* for respondent.

MR. CHIEF JUSTICE HERNÁNDEZ delivered the opinion of the
court.

Under the date of June 8, 1908, The American Railroad Co.
of Porto Rico filed a complaint in the District Court of Maya-
güez against Juan Ortiz Perichi, the fundamental facts of
which are the following:

1. That the plaintiff company is a corporation duly or-
ganized or incorporated under the laws of the State of New
York, and is duly authorized to do business in this Island, ac-
cording to the laws of Porto Rico.

2. That it is operating a railroad line in this Island, run-
ning from the city of San Juan to Ponce, wth its branches
and spurs passing through the municipalities of Añasco,
Mayagüez, San Germán and Lajas.

3. That on March 5, 1908, the Executive Council enacted
an ordinance, approved by the Government of Porto Rico on
the 10th of the same month and by the President of the United
States on March 19, authorizing the plaintiff company to build
and operate a branch of said railway, extending from a point

on the principal line between the stations of San Germán and Hormigueros running eastwardly, to a point in or near the western bank of the Estero River to the east of the town of Sabana Grande, for a distance of 14 kilometers, more or less, which ordinance is inserted in this allegation.

"An Ordinance Granting to the Compañía de los Ferrocarriles de Puerto Rico, and Its Assign, the American Railroad Company of Porto Rico, the Right to Construct and Operate a Spur or Branch Track from a Point on Its Main Line Between the Stations of San Germán and Hormigueros, Running in an Easterly Direction to a Point at or Near the West Bank of the Estero River, East of the Town of Sabana Grande, a Distance of About Fourteen (14) Kilometers.

*Whereas*, Under the provisions of section one of an ordinance enacted by the Executive Council of Porto Rico on the 28th day of October, 1901, entitled 'An ordinance granting to the Compañía de los Ferrocarriles de Puerto Rico and to its successors and assigns the right to extend its railway lines to and between certain points in the Island of Porto Rico,' approved by the Governor of Porto Rico on the 28th day of October, 1901, it is declared that 'the extension of the lines of the grantee herein authorized including the building of side tracks, spurs and branch roads are matters of public interest, etc.'; and

"*Whereas*, Under the provisions of section two of the said ordinance, it is provided that nothing contained therein shall be held or construed to give to the grantee the right to appropriate or use either for its main track or for any switch or side track, spur or branch, any portion of the public highway or other public property without the consent of the Executive Council first had and obtained; and

"*Whereas*, The said Compañía de los Ferrocarriles de Puerto Rico and its assign, the American Railroad Company of Porto Rico, desired to construct and operate a branch track from a point on its main line between the stations of San Germán and Hormigueros, running in an easterly direction to a point at or near the west bank of the Estero River.

"*Now, therefore, be it enacted by the Executive Council of Porto Rico:*

"Section 1.—That the said Compañía de los Ferrocarriles de Puerto Rico and its assign, the American Railroad Company of Porto Rico, may construct and operate a branch track or spur running from a point on the main line of the said railroad now operated by the Ameri-

can Railroad Company of Porto Rico, between the stations of San Germán and Hormigueros, running in an easterly direction to a point at or near the west bank of the Estero River east of the town of Sabana Grande, a distance of about fourteen (14) kilometers.

"Section 2.—That the said branch or spur shall be constructed and operated in all respects in accordance with the terms and conditions of the ordinance above mentioned, and the rights and privileges herein granted shall be taken and deemed to be subject to all of the terms and provisions thereof, as if all the terms of the said ordinance had been incorporated herein.

"Section 3.—That the plans and specifications for this extension and the manner of construction thereof shall be submitted to the Commissioner of the Interior of Porto Rico and be approved by him before work shall be begun. Said extension shall be constructed and maintained by the grantee in such a manner and condition as may be prescribed by the Commissioner of the Interior of Porto Rico or his authorized agent or agents, for the purpose of securing compliance with these conditions.

"Section 4.—That this ordinance shall not be valid unless accepted in writing within 30 days from the date of its approval by the President of the United States.

"Section 5.—That this franchise is granted subject to all the terms and provisions of section three of the joint resolution of Congress entitled: Joint resolution to provide for the administration of civil affairs in Porto Rico pending the appointment and qualification of the civil officers provided for in the Act approved April 12, 1900, entitled 'An Act temporarily to provide revenues and a civil government for Porto Rico, and for other purposes,' approved May 1, 1900, which reads as follows:

"Section 6.—That all franchises, privileges or concessions granted under section 32 of said act shall provide that the same shall be subject to amendment, alteration, or repeal; shall forbid the issue of stock or bonds, except in exchange for actual cash, or property at a fair valuation, equal in amount to the par value of the stock or bonds issued; shall forbid the declaring of stock or bond dividends; and, in the case of public-service corporations, shall provide for the effective regulation of the charges thereof and for the purchase or taking by the public authorities of their property at a fair and reasonable valuation. No corporation shall be authorized to conduct the business of buying and selling real estate or be permitted to hold or own real estate except such as may be reasonably necessary to enable it to carry

out the purpose for which it was created, and every corporation hereafter authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed 500 acres of land; and this provision shall be held to prevent any member of a corporation engaged in agriculture from being in any wise interested in any other corporation engaged in agriculture. Corporations, however, may loan funds upon real estate security, and purchase real estate when necessary for the collection of loans, but they shall dispose of real estate so obtained within five years after receiving the title. Corporations not organized in Porto Rico, and doing business therein, shall be bound by the provisions of this section so far as they are applicable.''

Done in open session of the Executive Council this the fifth day of March, A. D. 1908.

(Signed)        W. F. WILLOUGHBY,
*President of the Executive Council.*

Approved this the 10th day of March, 1908.

(Signed)        REGIS H. POST,
*Governor of Porto Rico.*

Approved this the 19th day of March, 1908.

(Signed)        THEODORE ROOSEVELT,
*President of the United States.*

4. That Juan Ortiz Perichi is the owner of a rural estate situated in the *barrio* of Retiro, municipal district of San Germán, known as the Hacienda Recreo, bounded on the north by the Río Grande, on the south by the road running to Sabana Grande, on the east by lands belonging to Pedro Acosta.

5. That the plaintiff company accepted the said ordinance of March 5, 1908, and has complied with all the conditions therein imposed to permit the construction of the branches mentioned, which crosses, among other properties, the said property of the defendant covering a strip of land having an area of 13,985 square meters, from a point adjoining lands belonging to Pedro Acosta on the western boundary of the estate of the defendant, to another point adjoining lands belonging to Angel Tio, on the eastern boundary of said estate.

6. That the plaintiff has repeatedly asked the defendant to sell the said strip of land at a reasonable price, and the defendant has always refused to do so.

7. That a reasonable price for said strip of land is $485, including the sugar cane planted thereon, and that the plaintiff is willing to pay said sum, which it has deposited with the secretary of the court for the purposes prescribed by law.

In view of the facts stated, the complaint concludes with the prayer that judgment be rendered declaring the land described to have been forever expropriated from Juan Ortiz and granting the plaintiff an absolute title of ownership thereto, with all the rights and privileges to such title appertaining, upon payment of the reasonable value thereof, with the costs against the defendant.

In answering the complaint, Juan Ortiz Perichi admitted as true the first, second, third, fourth and sixth allegations thereof, denied the fifth in so far as the plaintiff affirms that it has complied with all the conditions imposed by the ordinance quoted in the third allegation of the complaint, and also denies the seventh in so far as it fixes the sum of $465 as a reasonable price for the strip of land in question.

The defendant alleges as new matter that the ordinance of March 5, 1908, does not give the right to the plaintiff company to build and operate the railway branch referred to in the complaint, nor to deprive the defendant of the strip of land by condemnation; that the reasonable and conservative value of said strip of land is $3,000; and that the company, on the assumption that it had the right to construct and build such branch of the railroad, would not require for carrying out its purpose the entire strip of land to which it refers, as a small portion thereof would be sufficient therefor.

The trial having been had, the court rendered judgment on December 30 of last year, expropriating the said strip of land described in the complaint belonging to the defendant, Juan Ortiz Perichi, and ordering the plaintiff to pay him the sum of $900 as the value and reasonable price of said land and the

damages which might be caused him by the expropriation thereof, to which land the defendant will immediately execute in favor of the complainant, at his own expense, a good and recordable title, without any special taxation of costs.

Counsel for the defendant took an appeal from said judgment to this Supreme Court, which it devolves on us now to consider and decide.

The appellant alleges as the grounds of his appeal that the plaintiff has not complied with the requirements of the Act of March 12, 1908, relating to condemnation to obtain the ends sought in its complaint, and that even on the assumption that it had complied with such requirements, it had not established that the value of the land expropriated was $465 as alleged in the complaint, nor $900 as fixed by the judge in his judgment, because the value of the land has not been determined, nor the amount which shall be paid for depriving the defendant thereof, the defendant having proved on the contrary that the land and the deprivation thereof are worth at least $3,000, for all of which reasons the judgment appealed from should be reversed and the complaint dismissed, or, if the condemnation lies that such condemnation be ordered upon payment of the sum of $3,000, with the costs against the plaintiff.

The ordinance of the Executive Council of Porto Rico of March 5, 1908, approved by the Governor of this Island on the 10th of said month of March, and by the President of the United States on the 19th of said month, from which date it became operative in accordance with section two of the joint resolution of Congress of May 1, 1900, to provide for the administration of civil affairs in Porto Rico, and for other purposes, the pertinent portions of said ordinance as inserted in the complaint read as follows:

"An ordinance granting to the Compañía de los Ferrocarriles de Puerto Rico, and its assign, the American Railroad Co. of Porto Rico, the right to construct and operate a spur or branch track from a point on its main line between the stations of San Germán and Hormigueros,

running in an easterly direction to a point at or near the west bank of the Estero River, east of the town of Sabana Grande, a distance of about fourteen (14) kilometers.

"*Whereas,* Under the provisions of section one of an ordinance enacted by the Executive Council of Porto Rico on October 28, 1901, entitled 'An ordinance granting to the Compañía de los Ferrocarriles de Puerto Rico and to its successors and assigns the right to extend its railway lines to and between certain points in the Island of Porto Rico,' approved by the Governor of Porto Rico on October 28, 1901, it is declared that 'the extension of the lines of the grantee herein authorized including the building of side tracks, spurs and branch roads are matters of public interest, etc.'; and

"*Whereas,* Under the provisions of section two of the said ordinance, it is provided that nothing contained therein shall be held or construed to give to the grantee the right to appropriate or use either for its main track or for any switch or side track, spur or branch, any portion of the public highway or other public property without the consent of the Executive Council first had and obtained; and

"*Whereas,* The said Compañía de los Ferrocarriles de Puerto Rico and its assign the American Railroad Co. of Porto Rico desired to construct and operate a branch track from a point on its main line between the stations of San Germán and Hormigueros, running in an easterly direction to a point at or near the west bank of the Estero River.

"*Now, therefore be it enacted by the Executive Council of Porto Rico:*

"Section 1.—That the said Compañía de los Ferrocarriles de Puerto Rico, and its assign the American Railroad Co. of Porto Rico may construct and operate a branch track or spur running from a point on the main line of the said railroad now operated by the American Railroad Co. of Porto Rico, between the stations of San Germán and Hormigueros, running in an easterly direction to a point at or near the west bank of the Estero River east of the town of Sabana Grande, a distance of about fourteen (14) kilometers.

"Section 2.—That the said branch or spur shall be constructed and operated in all respects in accordance with the terms and conditions of the ordinance above mentioned, and the rights and privileges herein granted shall be taken and deemed to be subject to all of the terms and provisions thereof, as if all the terms of the said ordinance had been incorporated herein.

"Section 3.—That the plans and specifications for this extension and the manner of construction thereof shall be submitted to the Com-

missioner of the Interior of Porto Rico and be approved by him before work shall be begun.     Said extension shall be constructed and maintained by the grantee in such a manner and condition as may be prescribed by the Commissioner of the Interior of Porto Rico or his authorized agent or agents, for the purpose of securing compliance with these conditions.

"Section 4.—That this ordinance shall not be valid unless accepted in writing within 30 days from the date of its approval by the President of the United States.

"Section 5.—That this franchise is granted subject to all the terms and provisions of section three of the joint resolution of Congress entitled: Joint resolution to provide for the administration of civil affairs in Porto Rico pending the appointment and qualification of the civil officers provided for in the Act approved April 12, 1900, entitled 'An Act temporarily to provide revenues and a civil government for Porto Rico, and for other purposes,' approved May 1, 1900, which reads as follows:

"Section 3.—That all franchises, privileges or concessions granted under section 32 of said act shall provide that the same shall be subject to amendment, alteration or repeal; shall forbid the issue of stock or bonds, except in exchange for actual cash, or property at a fair valuation, equal in amount to the par value of the stock or bonds issued; shall forbid the declaring of stock or bond dividends; and, in the case of public service corporations, shall provide for the effective regulation of the charges thereof and for the purchase or taking by the public authorities of their property at a fair and reasonable valuation.     No corporation shall be authorized to conduct the business of buying and selling real estate or be permitted to hold or own real estate except such as may be reasonably necessary to enable it to carry out the purposes for which it was created, and every corporation hereafter authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed 500 acres of land; and this provision shall be held to prevent any member of a corporation engaged in agriculture from being in any wise interested in any other corporation engaged in agriculture.     Corporations, however, may loan funds upon real estate security, and purchase real estate when necessary for the collection of loans, but they shall dispose of real estate so obtained within five years after receiving the title.     Corporations not organized in Porto Rico, and doing business therein, shall be bound by the provisions of this section so far as they are applicable.     Done in open session of the Executive Council this the

5th day of March, A. D. 1908. (Signed) W. F. Willoughby, President of the Executive Council. Approved this the 10th day of March, 1908. (Signed) Regis H. Post, Governor of Porto Rico. Approved this the 19th day of March, 1908. (Signed) Theodore Roosevelt, President of the United States.''

The record does not contain the ordinance of October 28, 1901, the conditions of which must regulate the rights and privileges granted in the ordinance transcribed, as if it had been incorporated in the latter, and we believe that said ordinance of October 28, 1901, is necessary to enable us to determine whether the construction of the branch referred to in section one of the ordinance of March 5; 1908, had been declared a public utility, because even though the first ordinance declares that the prolongation of the lines of the grantee authorized by said ordinance, including the construction of spurs and branches are of public utility, we do not know what spurs and branches have been declared of public utility. The title of the ordinance granting The American Railroad Co. of Porto Rico and its successors and assigns the right to prolong its railway lines to and between certain points in the Island of Porto Rico does not lead us to the certain and indisputable conclusion that the branch between San Germán and Hormigueros involved in these proceedings is comprised under the branches of public utility to which the ordinance of October 28, 1901, refers. This ordinance should have been inserted in the complaint as a part of that transcribed of March 5, 1908. But let us admit that the construction of the branch in question was declared to be of public utility by the ordinance of March 5, 1908, in relation with the previous ordinance óf October 28, 1901. Then we would find that the construction of the branch was a work declared of public utility; but it would not have been specifically determined that the strip of land described in the complaint had to be the subject of condemnation, as prescribed in the last paragraph of section two of the Act approved March 12, 1908, to amend the act entitled ''An Act to provide for the condemnation of private property for

the purposes and under the conditions therein named," approved March 12, 1903.

After the strip of land to be condemned had been fixed the plaintiff could have gone to the proper district court to exercise the corresponding action, if the owners of the property to be expropriated had for any reason not consented to the condemnation, and in filing its complaint it should have embodied therein in full the declaration of public utility made by the Executive Council or attached a copy of such declaration thereto. This is specifically provided by section four of the said Act of March 12, 1908.

It is true that this act was not in force on March 5 of last year when the Executive Council granted the franchise invoked in the complaint; but it was in force on the date the complaint was filed and on the 19th of said month of March, when said franchise became legally operative.

Nor does the act for the condemnation of property of March 12, 1903, as amended by that of March 12, 1908, favor the plaintiff, because said act does not grant railway companies the right to select the lands they need for their purposes and which in their opinion should be condemned.

In the case of the *School Board of Carolina* v. *Jose E. Saldaña et al.,* decided by this Supreme Court on April 28, 1908, 14 P. R. Rep., 339, notwithstanding the fact that the construction of a school house had been declared a work of public utility prior to the date the Act of March 12, 1908, went into effect, we reversed the judgment of the lower court in order that the proceedings might be had under the law in accordance with the doctrine established in the opinion which served as a basis for said decision. In another case of the same party *The American Railroad Co. of Porto Rico* v. *Vicente Quiñones,* decided January 11 of the current year, we referred to the principles set forth in said opinion. If such principles had been taken into consideration by the lower court and it had examined both cases for the purpose, it appears to us that it would not have rendered the judgment which is the subject of this appeal.

We believe it unnecessary to enter into an examination of the evidence relating to the valuation of the land in question, because if the condemnation does not lie, it is useless to discuss the amount of the indemnity which shall be granted.

For the reasons stated the judgment of the District Court of Mayagüez should be reversed, and it is ordered that our decision be communicated to it for the proper purpose.

*Reversed.*

Justices Figueras, MacLeary, Wolf and del Toro concurred.